UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

WAYNE POLICE SERGEANT,
JOSEPH DUNCAN,
POLICE OFFICER JASON GOLLER,
WAYNE POLICE DETECTIVE
SERGEANT ROBERT MARTELLO,

Plaintiffs,

v.

OFFICE OF THE PASSAIC
COUNTY PROSECUTOR AND
JAMES AVIGLIANO Prosecutor,
in his official capacity, and JOHN DOES,
1 through 10,

Defendants.

Civil Action 05-1931 (ES) (CLW)

**OPINION**

**SALAS, DISTRICT JUDGE**

Now pending before this Court is the Office of the Passaic County Prosecutor's ("OPCP") and, in his official capacity, Prosecutor James Avigliano's ("the Prosecutor") joint motion for summary judgment. (Dckt. No. 91). Plaintiffs Joseph Duncan, Jason Goller, and Robert Martello jointly oppose the motion.[1] (Dckt. No. 93). The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendant's motion for summary judgment is GRANTED.

---

[1] Each plaintiff filed a separate action. (05-1931(Duncan); 05-2645 (Goller); and 05-2770 (Martello)). However, by a "Consent Order" dated August 5, 2005, the parties stipulated to consolidate the actions. (Dckt. No. 8). All three Complaints bring the same claims.

1

**I.     Factual Background**[2]

From the beginning, the Court notes that this action undisputedly arises out of a request by the Prosecutor that Plaintiffs provide urine specimens to the Passaic County Police Academy. Plaintiffs assert that they were harmed by this request and events that flowed therefrom. The Court also notes that in a parallel proceeding arising out of the facts and events at issue in this Court, the New Jersey Appellate Division held that under New Jersey law, a county prosecutor "has the authority to initiate and issue drug testing orders to police officers "based upon reasonable suspicion . . . when as here, the chief law enforcement officer in the affected jurisdiction consents to the County Prosecutor initiating the order." *Passaic County PBA Local 197 v. Office of Passaic County Prosecutor*, 895 A.2d 1187, 1192 (App. Div. 2006) (holding that in certain situations county prosecutors in New Jersey have the power to initiate and issue drug testing orders to law enforcement officers within the county based upon reasonable suspicion).

In the instant action, Plaintiffs assert the following claims against the OPCP and the Prosecutor: (1) violations of 42 U.S.C. § 1983; (2) violations of procedural and substantive due process, as well as equal protection, under both the Federal and New Jersey Constitution; (3) intentional infliction of emotional distress; (4) negligence; and (5) civil conspiracy.

In 2002, the OPCP formed a Joint Narcotics Task Force ("JNTF") made up of several Passaic County Sheriff's Officers, members of various municipal police departments and investigators as well as personnel from OPCP. (Def.'s 56.1 Statement, ¶ 1). In 2004, the JNTF began conducting a narcotics, prescription drug, and steroid distribution investigation in local gyms ("the investigation"). (Id. ¶ 2). During the investigation, Robert Post and Charles Post (collectively "the Post brothers") became suspects. (Id. ¶ 3). Wire intercept orders were secured

---

[2] The following facts are undisputed unless otherwise noted.

as to the Post Brothers and by August 2004 numerous drug related conversations were recorded identifying numerous other gym member suspects, including several Passaic County Sheriffs Officers, municipal police and investigators. (Id. ¶ 4).

Communications intercepted during an authorized electronic wire interception ("wiretap") in the course of the investigation indicated that law enforcement agents had compromised the investigation by tipping the targets off as to the investigation. (Id. ¶ 6). During the course of the investigation, it became apparent that the wiretap ordered by the JNTF had been compromised by a law enforcement officer, whose identity was not known. (Id. ¶ 7). The unidentified officer(s) divulged secret information to some of the targets of the investigation. (Id. ¶ 8). In addition, at least one law enforcement officer had been arrested as a conspirator in the underlying narcotics investigation. (Id. ¶ 9). During the course of the investigation, it became clear that several members of law enforcement may have been involved in the conspiracy, both as users of illegal drugs and as possible distributors of illegal drugs. (Id. ¶ 12). On August 8, 2004, several non-law enforcement personnel were arrested and possessed materials which demonstrate a possible relationship with law enforcement personnel. (Id. ¶13).

The investigation continued and it was determined that during the investigation and after the arrests of a number of individuals as a result of the sweep, certain members of the Wayne Police Department, who were not involved in the JNTF investigations, and had no role in the investigations, attempted to solicit information and details concerning the investigation from law enforcement personnel involved in the investigation. (Id. ¶ 14). In fact, Plaintiffs admit that they spoke to officers of the JNTF regarding the investigation. (Pl. Response to Pl. 56.1 Statement ¶¶ 16, 18, & 18; See also Def.'s 56.1 Statement, ¶¶ 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 ). In particular, on August 9, 2004, Plaintiff Duncan then contacted JNTF Sergeant Celantano and

inquired as to the targets of the JNTF investigation. (Pl. Response to Pl. 56.1 Statement ¶ 32). Plaintiff Duncan advised Sgt. Celentano that he knew the Post Brothers from the gym. (Id. ¶ 33). Plaintiff Duncan mentioned that there were rumors that Wayne police officers were being targeted in the investigation being conducted by the JNTF. (Id. ¶ 34). Plaintiff Duncan also asked Sergeant Celentano about the JNTF investigation and whether the investigation targeted a certain Wayne resident, Leonard Corsi. (Id. ¶35). At the time of the alleged incidents surrounding this investigation, Plaintiffs were employed by the Wayne Police Department. (Def.'s 56.1 Statement, ¶¶ 19, 20, & 21).

Additionally, after the arrest of the Post brothers on Monday, August 19, 2010, Plaintiff Goller, who also had no connection with the JNTF investigation and who worked under the control of Plaintiff Duncan on his shift, made a personal on-duty visit to Detective Zaccone's home and inquired about the Post brothers' arrest. (Id. ¶ 37).

The Prosecutor consulted with his staff and with Chief Raymond Riga about whether drug testing would be appropriate for members of the Wayne Police Department if it were determined that reasonable suspicion existed as to their use of illegal drugs. (Id. ¶ 39). Based on the discussion at the meeting, Chief Riga and the Prosecutor made the decision that reasonable suspicion existed to drug test certain officers, including Plaintiffs. (Id. ¶ 40, 42, 43, 44)..

## II. Discussion

Plaintiffs assert the following claims against the OPCP and the Prosecutor in his official capacity: (1) violations of 42 U.S.C. § 1983; (2) violation of procedural and substantive due process, as well as equal protection, under both the Federal and New Jersey Constitution; (3) intentional infliction of emotional distress; (4) negligence; and (5) civil conspiracy. The Court will address first the Federal claims and then move to the state law claims.

**A. Federal Claims**

The Eleventh Amendment protects non-consenting states from suits brought in federal court by private citizens seeking money damages. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The protection extends to state agencies as long as the state is the "real party in interest." *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 658 (3d Cir. 1989). Applying the *Fitchik* analysis, the Third Circuit held that county prosecutor's offices are agents of the state when performing classic law enforcement and investigative functions. *See Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996). And, Courts within the Third Circuit have consistently held that the Eleventh Amendment precludes federal suits against New Jersey county prosecutors, as well as their offices, arising out of their law enforcement functions on the basis that the real party in interest in these suits is the State of New Jersey. *See Beightler v. Office of Essex County Prosecutor*, 342 Fed. App'x. 829 (3d Cir. 2009) (defendant entitled to sovereign immunity for action stemming out of decision to prosecute plaintiff for unlawful possession of a firearm); *Hyatt v. County of Passaic*, No. 08–3206, 2009 WL 2055136 (3d Cir. July 16, 2009) (county prosecutor's office entitled to sovereign immunity on charges of malicious prosecution, false arrest, and false imprisonment claims because procedures, policy, and training implicated in incident were related to the prosecutorial function); *Nugent v. County of Hunterdon*, No. 09–2710, 2010 U.S. Dist. LEXIS 47654, 2010 WL 1949359 (D.N.J. May 14, 2010) (noting that while local government units can be sued under § 1983, "under New Jersey law, a county prosecutor's office does not have a separate legal existence ... [and][t]herefore, New Jersey courts have consistently held that a county prosecutor's office is not a suable entity under § 1983") (citations omitted); *Logan v. New Jersey*, No. 09–1528, 2010 U.S. Dist. LEXIS 13479, 2010 WL 572127 (D.N.J. Feb. 17,

2010) (JAP) (claims arising from prosecutor's office's decision to unsuccessfully pursue plaintiffs on charges of resisting arrest and inciting a riot); *Paez v. Lynch*, No. 07–5036, 2009 U.S. Dist. LEXIS 119342, 2009 WL 5171858 (D.N.J. Dec. 23, 2009) (granting summary judgment for defendant on claims of malicious prosecution under federal and state law); *Watkins v. Attorney General of New Jersey*, No. 06–1391, 2006 U.S. Dist. LEXIS 73075, 2006 WL 2864631 (D.N.J. Oct. 4, 2006) (county prosecutor's office entitled to sovereign immunity; also holding that it is not a "person" within the meaning of Section 1983); *Banda v. Burlington County*, No. 03–2045, 2006 U.S. Dist. LEXIS 68791, 2006 WL 2739718 (D.N.J. Sept. 26, 2006) ("The Burlington County Prosecutor's Office and the individual prosecutors, in their official capacities only, are entitled to Eleventh Amendment immunity from this suit"); *Davis v. Township of Lakewood*, No. 03–1025, 2005 U.S. Dist. LEXIS 16420, 2005 WL 1863665 (D.N.J. Aug. 4, 2005) (holding county prosecutor's office to be an alter-ego of the State for Eleventh Amendment purposes).

Here, considering the undisputed facts of this case in their totality, the Court finds that the allegations regarding the Prosecutor's request for Plaintiffs to submit a urine sample involved the performance of traditional law enforcement and investigative functions.  Specifically, the OPCP was involved in a drug investigation. (Def.'s 56.1 Statement, ¶ 1, 2).  Over the course of that investigation the OPCP and the Prosecutor uncovered information through recordings and arrests leading them to believe that law enforcement officers were involved in the activities under investigation. (Id. ¶¶ 4, 6, 7, 9, 12, 13  In addition, during the investigation and after the arrest of at least one law enforcement officer (id. ¶ 9), members of the Wayne Police Department—who were not members of the JNTF—contacted members of the JNTF to solicit information regarding the investigation, including the names of potential suspects. Pl. Response to Pl. 56.1 Statement ¶¶ 16, 18, & 18; See also Def.'s 56.1 Statement, ¶¶ 20, 21, 22, 23, 24, 25,

26, 27, 28, 29, 30 ). With this information in hand, exercising the power to request urine samples from police officers for analysis was a logical next step in the investigative process. (Id. ¶ 40, 42, 43, 44).

In fact, Plaintiffs allege no other conduct by either the OPCP or the Prosecutor in his official capacity that the Court can construe as non-prosecutorial or non-investigatory in nature. Because the Court finds that the allegations of wrongdoing committed by the OPCP and the Prosecutor in his official capacity occurred during their exercise of traditional law enforcement and investigative functions, any judgment rendered in favor of Plaintiffs and against the OPCP and or the Prosecutor in his official capacity would be paid out of the state treasury. In that regard, Plaintiff's suit as it relates to either the OPCP or the Prosecutor in his official capacity is a suit against an arm of the State of New Jersey and, therefore, barred by the Eleventh Amendment. *See Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996).

Further, to be clear, the Eleventh Amendment bars suit against a State official in his or her official capacity, because it "is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Here, the Prosecutor is named exclusively in his official capacity. Therefore, Plaintiffs' suit against the Prosecutor in his official capacity is barred by the Eleventh Amendment.[3] *See Beightler v. Office of Essex County Prosecutor*, 342 Fed. App'x. 829 (3d Cir. 2009)

---

[3] Although not raised by the parties, the Court is cognizant of the the Third Circuit's instruction that district courts should examine the complaint and the "course of proceedings" to determine whether a plaintiff has sued defendants in their individual capacities, official capacities, or both. *Moore v. Cuttre*, 2010 U.S. Dist. LEXIS 62390, at * 6–7 (D.N.J. June 23, 2010) (citing *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), aff'd, 502 U.S. 21 (1991)). That said, the only parties who have moved for summary judgment are the OPCP and the Prosecutor in his official capacity and, therefore, the issue of "individual capacity" is not squarely before this Court. That said, based on the Court's own review of the record, there are no indicia of intent to sue the Prosecutor in his individual capacity in the Complaint, the Answer, or any other proceedings in this matter.

Accordingly, because the Court holds that the OPCP and the Prosecutor enjoy Eleventh Amendment immunity from Federal claims, said claims are dismissed with prejudice.

### B. State Law Claims

In addition to their Federal claims, Plaintiffs allege state law claims for (1) violations of the New Jersey State Constitution, (2) intentional infliction of emotional distress; (3) negligence; and (4) civil conspiracy. Defendants seek dismissal of the claims, arguing that sovereign immunity bars state law claims against state entities. The Court agrees.

The Court finds that Plaintiffs' state law claims against the Defendants acting in their official capacities are barred by the Eleventh Amendment. The Eleventh Amendment provides that a court may not grant "relief against state officials on the basis of state law, whether prospective or retroactive." *Pennhurst*, 465 U.S. at 106. In *Pennhurst*, the Supreme Court clarified that "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Id*. at 121 (discussing the tension between pendant jurisdiction and Eleventh Amendment jurisprudence).

Here, Plaintiffs allege that the OPCP and the Prosecutor in his official capacity violated a number of state laws while executing their duties as agents of the state. As stated *supra*, Plaintiffs' claims seek judgment that will ultimately be paid from the state treasury. Additionally, the OPCP is an agent of the state, acting under the auspices of the Attorney General. Accordingly, Plaintiffs' state claims against the Defendants in their official capacities are barred by the Eleventh Amendment.

### III.  Conclusion

For the foregoing reasons, Defendants' motion is GRANTED and Plaintiffs' claims against the OPCP and the Prosecutor in his official capacity are dismissed with prejudice. An appropriate order shall accompany this opinion.

<em>s/Esther Salas</em><br>
<strong>Esther Salas, U.S.D.J.</strong>

Dated: March 30, 2012